UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

**ROBERT LEWIS JONES**           CIVIL ACTION NO. 07-1334

**VS.**                           SECTION P

**RICHARD STALDER, ET AL.**       JUDGE DOHERTY

                                  MAGISTRATE JUDGE METHVIN

*REPORT AND RECOMMENDATION*

Before the court is a civil rights complaint (42 U.S.C. §1983) filed on August 9, 2007 by *pro se* plaintiff Robert Lewis Jones. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Allen Corrections Center (ACC), Kinder, Louisiana. Plaintiff seeks injunctive relief in the form of a temporary restraining order directing the defendants (LDOC Secretary Richard Stalder, ACC Warden Terry Terrell, ACC Medical Director Nelda Wilson, and ACC Staff Physician Dr. B.J. t'Hart) "... to immediately make the necessary arrangements for Plaintiff to be seen by a heart specialist and podiatrist both who specialized in the care and treatment of patients with diabetes..." [doc. 1-1, paragraph V]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. Plaintiff's motion to proceed *in forma pauperis* has been determined to be deficient and plaintiff has been directed to cure the deficiency. [doc. 2] Nevertheless, since plaintiff seeks immediate injunctive relief, it is recommended that immediate action be taken, and that the complaint and its accompanying Motion for Temporary Restraining Order and Motion for Preliminary

Injunction [docs. 1 and 3] be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous for the following reasons.

*Background*

Plaintiff is an inmate in the custody of the LDOC. He is incarcerated at the ACC and claims that he "... has been complaining off and on since 10-04 about [his] feet..." [doc. 3, p. 2] On January 25, 2005 plaintiff submitted an Administrative Remedies Procedure (ARP) grievance to the ACC administration.  In that grievance plaintiff complained that he was examined by Dr. Williams on January 18, 2005; he asked the physician to treat his swollen feet. According to plaintiff, Dr. Williams advised plaintiff that he was receiving the appropriate treatment and needed to allow the prescribed medication to take effect. According to plaintiff, his request for a referral to "outside medical care" was denied by the physician for economic reasons only.  This ARP was denied with the following notation:

> Health Services Administrator Nelda Wilson has reviewed inmate request for administrative remedy. His medical records reflect that inmate was seen by Doctor Homer Williams on December 7, 2004 and on January 18, 2005. Inmate was not seen on November 18, 2004.  There has not been any discussion of sending [indecipherable] facility for treatment. He has been seen six times by [indecipherable] Barbaro T'Hart or Dr. Williams. His medication was changed each time inmate was seen by the doctor. Inmate was instructed what to do for the pain and swelling in his feet. Inmate Robert Jones [indecipherable] the medical care and his claim and request for relief are denied. [doc. 1-3, p. 2]

Plaintiff apparently disagreed with this decision claiming that despite having been examined and treated by the physicians he was still in pain. [*id*.]

On November 6, 2006 plaintiff wrote a complaint to Nurse Nelda Wilson requesting heart testing. Plaintiff advised Nurse Wilson that she had 15-20 days to take action or he would file suit in federal court. [doc. 1-3, p. 4]

3

On March 26, 2007 plaintiff submitted a second letter to Nurse Wilson requesting heart testing. [doc. 1-3, p. 7]

On June 18, 2007 plaintiff submitted an Inmate Request Form in which he complained of chest pain. On the same date Nurse Wilson advised, "If you are having chest pain put in a sick call request! You know how the system works– you request and then we see you." [doc. 1-3, p. 5] On the same date he submitted an Inmate Request Form "To see a nerve doctor for the constant painful and frequent bout of neuropathy. I need to see a neurologist to get a handle on this problem." The ACC medical department responded, "The only way 'to get a handle' is to get your blood sugar under control. We have discussed this many times." [doc. 1-3, p. 9]

On June 20, 2007 plaintiff submitted an Inmate Request Form stating,

> The Dr. has seen my feet twice in the last six weeks with no prognosis or treatment plan suggested. She is not a podiatrist which I need to see at least once a year. I see the eye [doctor] once a year. It is simply good diabetic management for me to have my feet seen by a podiatrist. I've not seen a podiatrist for my feet. Putting in a sick call is useless if it's not to see a podiatrist who can get a [indecipherable] proper diagnosis of the problems of my feet and suggest a treatment plan to correct the problems. I again respectfully request to be allowed to see a podiatrist for the symptoms ... [doc. 1-3, p. 8]

On June 21, 2007 plaintiff submitted an Inmate Request Form requesting copies of his medical file. [doc. 1-3, p. 6] On the same date he replied to the medical department's response to his June 18 Inmate Request Form. Plaintiff advised,

> Your suggestion of 'getting' my blood sugar under 'control' is an empty and useless suggestion. You are fully aware that I have absolutely 'zero' control of the maintenance of my blood sugar. A Neurologist can and will prescribe a course of action that will enable me to get a handle on my blood sugar ... Over the past nine to twelve months, I've complained and kept medical painfully aware of the deteriorating condition as my body relates to the effect of Neuropathy. I'm in pain more frequently and it shows no sign of getting better. As a matter of fact, it will not get any better without the intervention of a Neurologist who's trained to care for diabetics.... [doc. 1-3, p. 10]

4

On June 25, 2007 Nurse Wilson responded, "Only Dr. T'Hart will order you a [neurological appointment] and I stand by my statement only you can get your blood sugar under control... [indecipherable]..." [*id.*]

On July 3, 2007 plaintiff wrote a letter to Warden Terrell and Nurse Wilson. In the letter plaintiff related that he missed a medical "call-out" on July 2 to see the ACC physician for complaints of dizziness. He was told to make a request for emergency "sick call" and during the preliminary exam, the nurse observed a build-up of wax in his ears and suggested that the wax may have caused his dizziness. Plaintiff indicated that his tardiness to the sick call was not his fault and therefore he refused to submit another "sick-call" form. Plaintiff demanded an appointment with the physician within 72 hours; plaintiff indicated that his alternative was "... to seek further legal options..." [doc. 1-3, pp. 11-14]

On July 22, 2007 petitioner corresponded with the ACC Medical Staff; he complained of swelling and indicated that he would not walk to "insulin call-out" or "chow hall" because of the swelling. [doc. 1-3, p. 3]

Plaintiff signed his complaint on August 7, 2007 and the complaint and his "Declaration in Support of Motion for a Temporary Restraining Order and Preliminary Injunction" were mailed on the same date and received and filed in this court on August 9, 2007. [doc. 1-1 and doc. 3] In the latter document plaintiff complained that on July 19, 2007 he was refused medical treatment for the swelling in his feet by the medical staff at ACC. According to plaintiff, the ACC medical staff responded to this emergency sick-call by advising plaintiff to keep his feet elevated. Plaintiff referred to his July 22, 2007 letter in which he indicated that he would not walk to "insulin call-out" or "chowhall" because of the edema or swelling in his feet. According

5

to plaintiff, as a result of this letter, he was examined by Nurse Fontenot who classified the swelling as an "edema 4 and edema 3." Plaintiff was admitted to the infirmary to await an examination by the physician on Monday July 23. On that date he was examined by Dr. Bennett who advised plaintiff that the swelling was due to inactivity. Plaintiff claimed to have lost 8 lbs. of fluid during the 24 hour period he was in the infirmary. In general plaintiff complained that the medical staff were not attending to his various problems and he requested that he be referred to "... a Heart Specialist, Podiatrist, Neurologist, Urologist, Dermatologist and Diabetic Care Specialist..." According to plaintiff, "My heart is seriously flawed (a personal opinion) and will not get any better on its own. The conditions (edema) of my feet, legs and thighs will also not get better on its own. They drain themselves when I have my feet propped up, however, when I get up they swell back up for as long as my heart is beating, they are going to swell until intervention is inacted [sic] by Specialists who are trained to treat this type of ailment." [doc. 3]

As shown above, plaintiff seeks only prospective injunctive relief.

### *Law and Analysis*

### *1. Frivolity Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has submitted a complaint and exhibits which outline the specific contours of his claim for relief. Plaintiff has provided all of the information necessary to resolve his claims. He

7

need not be afforded an opportunity for further amendment. His claims are frivolous. His complaint fails to state a claim for which relief may be granted.

## 2. Medical Care Claims

Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of

8

deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Deliberate indifference under the Eighth Amendment requires the same showing of "subjective recklessness" used in criminal law. *Farmer v. Brennan*, 511 U.S. 825 (1994). Negligence, even gross negligence, or medical malpractice is not enough to meet the test. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1993) (citing *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir.1979)). An incorrect diagnosis does not suffice. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985). Rather, the plaintiff must show the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.*

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. As shown above plaintiff simply disagrees with the quality of his treatment, and with the timing of it; his factual allegations are insufficient under the legal standard of the Fifth Circuit to support his claim for relief. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995).

Further, the facts alleged, do not show that the defendants' <u>response to plaintiff's complaints indicated that they subjectively intended that harm occur to him</u>. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001). In addition, whether or not the defendants "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did

9

not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The pleadings and exhibits fall far short of such a showing.

In short, plaintiff's allegations are insufficient to state a claim for deliberate indifference. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). He has not shown that the defendants "... refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[1] Compare *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985). The facts alleged herein, taken as true for the purposes of this Report, do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claims are therefore frivolous and dismissal on that basis is recommended.[2]

---

[1] Indeed, the facts alleged by plaintiff indicate that he was examined by Dr. Williams on December 7, 2004 and January 18, 2005. Prior to those examinations, he was seen by either Dr. Williams or Dr. T'Hart a total of six times. [doc. 1-3, p. 2] He was admitted to the infirmary in July 2007 and examined by Dr. Bennett. On each occasion that he was examined by a physician or nurse, a specific course of treatment was prescribed. Plaintiff, in each instance disagreed with the treatment recommended.

[2] Further, it must be noted that plaintiff, by his own admission, did not exhaust administrative remedies. [doc. 1-1, paragraph II] The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e, was amended by the Prison Litigation Reform Act (PLRA). As amended, §1997e(a) makes the exhaustion requirement mandatory in prison conditions cases. Section 1997e(a) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."Under current law, a prisoner must exhaust the administrative remedy procedure before proceeding to court, the statute provides for no exceptions. See *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998) (§1997e(a) "plainly requires that administrative remedies be exhausted **before** the filing of a §1983 suit, rather than while the action is pending..." "[t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in

10

*3. Temporary Restraining Order*

Plaintiff requested only prospective injunctive relief in the form of a Temporary Restraining Order and a Preliminary Injunction. In his original complaint he prayed for "... a temporary restraining order directing defendants to immediately make the necessary arrangements for plaintiff to be seen by a heart specialist and podiatrist, both who specialized in the care and treatment of patients with diabetes..." [doc. 1-1, paragraph V] In his Declaration in Support of Motion for a Temporary Restraining Order and Preliminary Injunction he prayed for a temporary restraining order "... ordering the defendants to 'expediently' arrange an appointment with a heart specialist that specialized in the treatment and care of patients with diabetes. Let it further be ordered that defendants place the care and diabetes management in the hands of an diabetes care physician. Let it further be ordered that the defendants take no retaliatory action against plaintiff ...Let it also further be ordered that the defendants examine and treat plaintiff for the infection that is affecting his genital area within 24 hours after receipt of this order and the defendants report the diagnosis to the Court the findings of this examination." [doc. 3, paragraphs 33-35; see also doc. 3, p. 10]

In order to be entitled to a temporary restraining order or a preliminary injunction, a litigant must demonstrate each of the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse

---

prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures."). Of course, the failure to exhaust administrative remedies is an affirmative defense which may not be raised by the court *sua sponte*. *Jones v. Bock*, --- U.S. ----, 127 S.Ct. 910, --- L.Ed.2d ----, 2007 WL 135890, (Jan. 22, 2007). Thus, while dismissal under §1997e(a) would be inappropriate at this time, it would nevertheless be the inevitable conclusion of this case in the event that it should survive initial review.

11

party; and (4) the injunction will not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 418-20 (5th Cir.2001). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir.1976).

Plaintiff simply cannot prevail because, as shown above, he has not demonstrated a substantial likelihood of success on the merits.

Further, it would be against the public interest to issue an injunction based solely on plaintiff's disagreement with the treatment program authorized by his treating physicians at ACC. The Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." *Shaw v. Murphy*, 532 U.S. 223, 230, 121 S.Ct. 1475, 149 L.Ed.2d 420, (2001); accord *Washington v. Harper*, 494 U.S. 210, 223-24, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *Turner v. Safley,* 482 U.S. 78, 84-85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547-48, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Plaintiff asks this court to substitute his judgment for the judgment of his treating physicians. Plaintiff's allegations are insufficient to warrant such interference into the administration of the Allen Corrections Center.  In short, plaintiff has not shown that he is entitled to prospective injunctive relief.

Accordingly,

12

**IT IS RECOMMENDED** that plaintiff's civil rights complaint [doc. 1] be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted;

**IT IS FURTHER RECOMMENDED** that plaintiff's Motion for Temporary Restraining Order or Injunction [doc. 3] be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

Signed in chambers on August 21, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)